***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Houser.
 *********** MOTION
On April 20, 2009, plaintiff filed a motion for a ten percent late payment penalty. The Full Commission finds that plaintiff is not entitled to a ten percent late payment penalty. Therefore, plaintiff's motion is DENIED.
 *********** *Page 2 
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On all relevant dates, an employment relationship existed between the parties.
5. Defendant-employer is self-insured for workers' compensation and Constitution State Service Company was the third-party administrator on the risk at the time of plaintiff's compensable injury.
6. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 Wage Chart.
8. At the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms, which was admitted into the record and marked as Stipulated Exhibit (3).
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was thirty-two years of age with her date of birth being 4 February 1977. Plaintiff is a high school graduate and has a bachelor's degree in communications with a minor in English. Plaintiff also completed paralegal and computer courses at Forsyth Technical College. Prior to her employment with defendant-employer, plaintiff worked as a paralegal and as manager of a department store.
2. Plaintiff's employment with defendant-employer began in October 2006 as a customer service representative handling telephone calls from customers and offering products.
3. Plaintiff initially worked either eight or ten hours per day, but later settled on eight hour days due to childcare issues. Plaintiff's base salary was $11.60 per hour with the opportunity to receive bonuses if she and her team reached their goals.
4. On 18 December 2006, plaintiff tripped on cords in her workspace and fell, landing on her back and buttocks. Defendants do not dispute that this incident constituted an injury by accident, and initially treated the claim as a medical only claim.
5. Plaintiff was not scheduled to work on 19 December 2006. Later that day, plaintiff sought treatment at the Forsyth emergency room where plaintiff reported experiencing moderate low back pain without radiation. An x-ray revealed normal results. An examination revealed mild vertebral point tenderness over the mid and lower lumbar spine, mild soft tissue tenderness in the right middle region of the lumbar spine, but no limitation in her range of motion. Plaintiff was diagnosed as having an acute lumbar strain and was medically excused from work for the following day.
6. Plaintiff did not work during the period of 20 December 2006 through *Page 4 
22 December 2006. Plaintiff returned to work for defendant-employer on 23 December 2006 and according to time records, she worked a normal schedule from that date through 4 February 2008. However, plaintiff contends that during this period she also continued to experience and report back pain
7. Ms. Denise Fox, plaintiff's supervisor until February 2007, testified that for three months following the injury of 18 December 2006, plaintiff performed her regular job and did not request medical care or report ongoing back symptoms. Ms. Fox further testified that subsequent to February 2007, she continued to see plaintiff at work until February 2008, and that plaintiff made no complaints to her of ongoing symptoms while continuing to work in her regular job.
8. On 18 September 2007, plaintiff sought medical treatment at Triad Women's Center. Plaintiff testified that she sought treatment on this date after experiencing pain in her groin area. However, medical records from that date do not reference groin pain.
9. At Triad Women's Center, plaintiff was examined by Dr. Eleanor Green, a gynecologist, and was prescribed medication for a bacterial infection. There are no references in the medical records from this date thAt reflect plaintiff reported experiencing back pain.
10. Plaintiff did not work during the period of 5 February 2008 through 8 February 2008. On 9 February 2008, plaintiff reported to defendant-employer's facility and worked a portion of the day before being transported by ambulance to the emergency room of Moses Cone Hospital. The medical records from the emergency room reflect that plaintiff reported having experienced right groin pain for the past two months that had worsened the day before. These records also reflect that plaintiff reported having experienced no known injury. *Page 5 
11. Plaintiff then left the emergency room without obtaining treatment and went to Moses Cone Urgent Care a short time later. Medical records from that facility reflect that plaintiff reported having experienced back pain for the previous two months that had worsened over the previous three days. Additional records from that facility and Dr. Mark Macpherson reflect that plaintiff reported having experienced inguinal pain for approximately one year since falling on her buttocks in December 2006. Plaintiff was diagnosed as having musculoskeletal injury, advised to seek treatment from a chiropractor and prescribed medications.
12. On 11 February 2008, plaintiff sought treatment at the Williams Chiropractic Clinic. Records from that facility reflect that plaintiff reported having fallen at work after getting her foot stuck on a cord and that the day following this incident, she was experiencing significant pain and sought treatment at a hospital. Records further reflect that plaintiff was diagnosed as having sustained a strain and was prescribed medications that dissipated her pain for approximately one month. Thereafter, plaintiff claims that her pain returned and radiated into her right groin which she reported to a workers' compensation representative.
13. Plaintiff received chiropractic treatment at Williams Chiropractic on at least three dates following her initial evaluation. The therapy plaintiff received consisted of Interferential therapy designed to decrease musculoskeletal pain and manipulation designed to remove structural dysfunctions of the involved joints, associated muscles and secondary neurologic alteration. Plaintiff was medically excused from work for the days she received these therapies.
14. On 25 February 2008, plaintiff sought additional treatment from Dr. Jeffrey Beane, at which time she reported experiencing right lower extremity radicular pain. The circumstances of plaintiff's December 2006 work-place injury are noted in the medical records *Page 6 
from Dr. Beane. Records also reflect that plaintiff reported experiencing persistent, worsening symptoms including right groin pain that had caused her to be unable to work since 12 February 2008.
15. Dr. Beane's examination revealed tenderness over the lumbosacral junction in the right posterior sacroiliac spine over the sciatic notch. Additionally, straight leg raises produced marked buttock, posterior thigh, and calf pain. X-rays of plaintiff's lumbar spine revealed mild disk space narrowing at L5-S1. Dr. Beane initially diagnosed plaintiff as having L4-L5 radiculopathy, and mild carpal tunnel syndrome secondary to bracing her back by utilizing her hand. Dr. Beane also recommended a lumbar MRI to evaluate plaintiff's radiculopathy, and medically excused her from work for one-week. Additionally, Dr. Beane opined that plaintiff's radiculopathy may be related to her 18 December 2006 injury by accident.
16. On 14 April 2008, plaintiff presented to the Forsyth Medical Center Emergency Room and reported experiencing pelvic, low back, and right leg pain. Medical records reflect that plaintiff also reported that her pain began several months prior to the examination and was worse on the date of the examination. Plaintiff was diagnosed as having acute lower back pain with radiation into the right leg and acute right-sided sciatica for which she was prescribed Vicodin, Flexeril, and Prednisone.
17. On 23 April 2008, plaintiff returned to Dr. Beane to discuss her MRI results, which revealed mild degenerative changes consistent with plaintiff's age. Additionally, a nerve conduction study produced normal results. Based upon these diagnostic studies, Dr. Beane did not recommend surgery as a treatment option and referred plaintiff to Dr. Richard Ramos for additional care. Dr. Beane also recommended that plaintiff undergo a series of injections and avoid unsupported bending, lifting more than ten (10) pounds and prolonged sitting. *Page 7 
18. On 5 May 2008, plaintiff sought treatment at the Headache Wellness Center from Dr. Marshall C. Freeman. Plaintiff reported that her headaches began in 2000, but that the pain had increased in intensity and frequency since her 18 December 2006 injury. Dr. Freeman diagnosed plaintiff as having chronic daily headaches of the migraine type complicated by medication overuse and recommended discontinued use of analgesics and narcotics. Additionally, Dr. Freeman recommended trigger point injection and an Electrodiagnosis to further evaluate plaintiff's condition.
19. In June 2008, plaintiff was examined by Dr. Ramos, a specialist in Physical and Rehabilitative Medicine. Following an examination, Dr. Ramos recommended additional diagnostic tests and referred plaintiff to other physicians. However, Dr. Ramos was and has been unable to explain the source of plaintiff's pain.
20. On 24 July 2008, plaintiff was examined by Dr. Mark Ottelin, an urologist. Based upon his examination of plaintiff, Dr. Ottelin did not believe plaintiff experienced any urological problems as a result of her 18 December 2006 back injury.
21. On 31 October 2008, plaintiff underwent a hip evaluation by Dr. Matthew D. Olin. This evaluation was recommended by Dr Ramos. Dr. Olin found no abnormality with respect to plaintiff's hip.
22. Dr. Beane initially testified that he could give a positive causation opinion, assuming plaintiff received a continuum of medical care. When provided with the information that plaintiff did not seek medical treatment following her 18 December 2006 injury during the period of 19 December 2006 to February 2008, thereby establishing that there was no continuum of medical care, Dr. Beane opined that plaintiff's 2008 condition was not likely related to her injury by accident. *Page 8 
23. Dr. Ramos has opined that plaintiff's injury on 18 December 2006 did not cause the problems she experienced in February 2008.
24. Defendants retained an independent expert, Dr. Frank Rowan, who is a board-certified Orthopedist. Dr. Rowan reviewed all of plaintiff's medical records and opined that it was more than likely than not that her injury of 18 December 2006 was not related to her the conditions for which she sought treatment beginning in February 2008. This opinion was reached largely due to the length of time between plaintiff's injury and follow-up medical care.
25. There is insufficient lay and medical evidence of record upon which to find that the conditions for which plaintiff began to seek treatment for in February 2008 were the direct and natural result of or causally related to plaintiff's 18 December 2006 injury by accident.
26. Any disability or inability to earn wages plaintiff may have had subsequent to 23 December 2006 was not related to her 18 December 2006 injury by accident.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 18 December 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. There insufficient lay and medical evidence of record upon which to conclude that the conditions for which plaintiff began to seek treatment for in February 2008 were the direct and natural result of or causally related to plaintiff's 18 December 2006 injury by accident. Id.; Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, *Page 9 353 N.C. 227, 538 S.E. 2d 912 (2000). Therefore, plaintiff is not entitled to additional medical or indemnity benefits. Id.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for additional benefits related to the 18 December 2006 work injury is hereby DENIED.
2. Each side shall bear its own costs.
This the 11th day of August 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1